UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANDRE MASSENA,

                              Plaintiff,

         v.                                                            3:10-cv-1245

LAURA BRONSTEIN; TARRICK ABDELAZIM;
BINGHAMTON UNIVERSITY STATE
UNIVERSITY OF NEW YORK; and
CITY OF BINGHAMTON,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Andre Massena commenced the instant action against Defendants pursuant to 42 U.S.C. § 1983 arising out of his suspension from the Binghamton University Masters of Social Work program and the non-renewal of his contract with the City of Binghamton's VISTA Program.

## I.    FACTS

At all times relevant hereto, from August 2006 until November 2009, Plaintiff was a student at the State University of New York at Binghamton ("SUNY Binghamton"). Plaintiff was enrolled in the Social Work Department and pursuing Master's Degrees in Social Work

("MSW") and Public Administration ("MPA").  From July 2008 through September 2008, Plaintiff was employed by the City of Binghamton as a VISTA Project Supervisor.[1]

Over the course of three meetings from March through June 2008, Plaintiff complained to Defendant Laura Bronstein, Chair of the SUNY Binghamton Social Work Program, about the conduct of SUNY Binghamton Professor David Tanenhaus.  Tanenhaus was, and continues to be, the Director of the Binghamton Housing Authority.  Plaintiff complained that Tanenhaus was mistreating his tenants by, among other things, improperly evicting minorities.  Bronstein did nothing in response to Plaintiff's complaints.

On or about August 25, 2008, Plaintiff placed posters in a SUNY Binghamton building stating that "a particular tenant of color in one of Tanenhaus' buildings was wrongfully evicted."  Compl. at ¶ 21.  "The posters blamed the Binghamton Housing Authority and the Director of the Binghamton Housing Authority . . . for the tenant's treatment, and they suggested that people call the SUNY Binghamton Social Work Department and the Binghamton Housing Authority to express their views."  Id.

On or about August 29, 2008, Bronstein sent Plaintiff an e-mail advising that Plaintiff had not met the requirements necessary to advance under the Social Work Department's Advancement Policy.  The bases for Bronstein's e-mail were that Plaintiff was alleged to have: (1) entered the University Downtown Center under false pretenses and

---

[1] The Court takes judicial notice of the Volunteers in Service to America ("VISTA") program.  See 42 U.S.C. § 4951, et seq.  According to the statute:

> The purpose of [the program] is to strengthen and supplement efforts to eliminate and alleviate poverty and poverty-related problems . . . by encouraging and enabling persons . . . to perform meaningful and constructive volunteer service . . . where the application of human talent and dedication may assist in the solution of poverty and poverty-related problems and secure and increase opportunities for self-advancement by persons affected by such problems.

- 2 -

continued to deny and lie about his activities in the building at that time; and (2) "perpetrated lies in this regard with University Police as per statements noted below and through emails with Professor Wiener and [Bronstein] where [Plaintiff] act[s] as if [he] had no knowledge of the posters distributed in the [University Downtown Center] that night; when in fact [he was] . . . observed on videotape distributing these posters [himself]." Id. at ¶ 22.[2]

By letter dated September 2, 2008, Plaintiff was given a plan that required, among other things, that he withdraw from his social work courses for the Fall 2008 semester, take a leave of absence during the Fall 2008 and Spring 2009 semesters, re-apply for admission into the program for the Spring 2009 semester, issue a formal statement retracting the statements in the posters, and discontinue the practice of urging community members to contact the Social Work Department to alleviate the wrongs alleged to have been committed by the Binghamton House Authority. A disciplinary hearing was held on September 18, 2008. Brostein ruled against Plaintiff. Plaintiff appealed.

In or around September 2008, Defendant Tarrick Abdelazim, the person responsible for administering the VISTA program and a member of the Binghamton Housing Authority, declined to renew Plaintiff's contract to be a VISTA Supervisor.

In an October 21, 2008 memorandum to the SUNY Binghamton College of Community and Public Affairs ("CCPA") Ethics and Integrity Committee, Bronstein recommended that Plaintiff be dismissed from the Social Work program. Thereafter, the "Plan" and the allegations of misconduct against Plaintiff were withdrawn.

---

[2] Plaintiff denies lying about his reason for being in the building and contends that the real reason for Brostein's letter was the content of his speech about Tanenhaus, the Binghamton Housing Authority, and the SUNY Binghamton Social Work Department.

Based on the foregoing allegations, Plaintiff has asserted a claim that he was retaliated against for engaging in protected speech in violation of the rights guaranteed to him by the First Amendment.[3]

Presently before the Court is Defendants City of Binghamton and Tarrick Abdelazim's motion pursuant to Fed. R. Civ. P. 12(b) seeking dismissal of the claims against them in their entirety.

## II.    STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65.  "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965.  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'"  Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

---

[3] Plaintiff initially asserted a due process claim under the Fourteenth Amendment, but has since withdrawn that claim.  Accordingly, the Court will not address it.

- 4 -

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft, 129 S. Ct. at 1949. Legal conclusions must be supported by factual allegations. Iqbal, at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

With this standard in the mind, the Court will address the pending motion to dismiss.

### III.     DISCUSSION

####     a.     Whether Plaintiff's Speech Was Disruptive to the City of Binghamton's VISTA Program

Relying on Waters v. Churchill, 511 U.S. 661 (1994), and Jeffries v. Harletson, 52 F.3d 9 (2d Cir. 1994), Defendants move to dismiss the First Amendment claim on the ground that they were entitled to not renew Plaintiff's VISTA Supervisor contract because he engaged in actions disruptive to the existence of the VISTA program.[4] Defendants contend that Plaintiff's posters arguably violated his contract with the City of Binghamton and the contract between the City of Binghamton and the Corporation for National and Community Service and, therefore, placed annual renewal of the VISTA Program in jeopardy.

---

[4] Defendants also maintain that there was no renewal provision in the contract.

Defendants maintain that it would be disruptive to the existence of the program if the City's grant was canceled due to contract violations.  Plaintiff responds that whether his conduct was sufficiently disruptive is a factual issue that cannot be resolved on a motion to dismiss.

To succeed on this argument, Defendants bear the burden of demonstrating that: (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech.  Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir. 1995); see also Anemone v. Metropolitan Transp. Auth., 629 F.3d 97, 119 (2d Cir. 2011).

The basis of Defendants' argument is found in paragraph 9 of the Memorandum of Agreement between the Corporation for National and Community Service and the City of Binghamton, which was incorporated by reference into Plaintiff's contract with the City of Binghamton.  That paragraph provides as follows:

> The Sponsor [the City of Binghamton] further agrees not to: . . .
>
> d. Approve the involvement of any AmeriCorps VISTA members assigned to it in planning, initiating, participating in, or otherwise aiding or assisting in any demonstration whatsoever.

Defendants argue that, by engaging in his demonstrations concerning Tanenhaus, placing the posters in the University Downtown Building, and urging community members to call the Department of Social Work concerning Tanenhaus and the Binghamton Housing Authority, "Plaintiff breached his Project Service Agreement by breaching the fourth condition of Paragraph 9 of the VISTA Contract."  Defs'. Mem. of Law at 5.  The argument continues that, by breaching his Project Service Agreement, Plaintiff placed the City in the position of

violating its agreement with the Corporation for National and Community Service, thereby jeopardizing its receipt of grant funds.

Based upon the current record, the Court cannot conclude that Defendants reasonably believed that Plaintiff's conduct violated his contract with the City or the City's contract with the Corporation for National and Community Service (the "VISTA Contract"). The VISTA Contract provides that the City of Binghamton shall not "approve" Plaintiff's involvement in "planning, initiating, participating in, or otherwise aiding or assisting in any demonstration." There is nothing in the record to date suggesting that the City approved of Plaintiff's activities, thereby risking a violation of the agreement. While other facts may exist suggesting that Plaintiff's conduct somehow jeopardized the City's receipt of grant funds, those facts are not presently before the Court.

Defendants also argue that, according to the Complaint, Abdelazim refused to renew the contract because of the "postering incident," thereby implicating the manner of Plaintiff's expression; not the content expressed. It is reasonable to infer from the general tenor of the Complaint that Plaintiff is contending that Defendants' actions were on account of the content of his speech; not the manner in which he expressed himself. The "postering incident" can reasonably be interpreted to cover the manner of expression or the content expressed.

### b. Municipal Liability

The City of Binghamton next moves to dismiss the claims against it on the ground that the Complaint fails to allege an unconstitutional act pursuant to an official policy of the City or by a final policymaker. Plaintiff responds that the Complaint alleges that Abdelazim is

a final policymaker with respect to the administration of the VISTA program and, therefore, has adequately pled municipal liability.

> As the Second Circuit has explained:
>
> In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. . . . The fifth element-the "official policy" element-can only be satisfied where a plaintiff proves that a municipal policy of some nature caused a constitutional tort. . . . In other words, a municipality may not be found liable simply because one of its employees committed a tort. . . .
>
> Where a plaintiff seeks to hold a municipality liable for a single decision by a municipal policymaker, . . . the plaintiff must show that the official had final policymaking power . . . . Moreover, the challenged actions must be within that official's area of policymaking authority. . . .
>
> An official has final authority if his decisions, at the time they are made, may fairly be said to represent official policy. . . . Whether an official has final policymaking authority is a legal question, determined on the basis of state law. . . . [T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit.

Roe v. City of Waterbury, 542 F.3d 31, 36-37 (2d Cir. 2008) (internal quotations, alterations, and citations omitted).

With respect to Abdelazim's authority, Plaintiff's Complaint states that he is the City of Binghamton's Deputy Mayor, he is "the official working for the City of Binghamton responsible for administering the VISTA program . . . and a Board Member of the Binghamton Housing Authority,. . . ." and he is a final policymaker. Simply labeling Abdelazim as a final policymaker is a legal conclusion that does not satisfy the factual pleading standards required by Twombly. The Court takes judicial notice of the fact that the City of Binghamton does not have a Deputy Mayor position. See Binghamton City Charter,

Art. II; § G-48.  The Complaint does not otherwise plausibly allege that Abdelazim was a final policymaker for the City of Binghamton.

Even assuming Abdelazim had responsibility for administering the VISTA program, it does not mean that he had the authority to enter into a contract with Plaintiff for the VISTA Supervisor position.  As is relevant hereto, the City of Binghamton's Procurement Ordinance requires that contracts be negotiated by the administration and that the contract be awarded by the Board of Contract and Supply.  Binghamton, NY. Ord. § 127-11(c).  The Mayor may not award a contract without prior approval from the Board of Contract and Supply.  The Complaint does not allege, and Plaintiff does not point to, anything plausibly suggesting that Abdelazim was part of the Board of Contract and Supply.  The Board of Contract and Supply is comprised of the Mayor, Comptroller, Commissioner of Public Works, Corporation Counsel, and the City Engineer.  Id. at § 18-7.  Moreover, Plaintiff's contract was signed by the Mayor of the City of Binghamton (not Abdelazim) and there is no renewal clause in the contract.[5]

Because there are no plausible allegations that Abdelazim had the authority to renew Plaintiff's contract or enter into a new contract with Plaintiff, he cannot be said to be a final policymaker for the City of Binghamton.  Accordingly, Plaintiff has failed to adequately allege that any harm was the result of an official custom or policy.  The claims against the City of Binghamton must, therefore, be DISMISSED.

**IV.    CONCLUSION**

---

[5] The Court considers the contract in connection with the motion to the dismiss because it is expressly referenced in the Complaint and it is the non-renewal of this contract that forms the basis of Plaintiff's claims against Defendants Abdelazim and the City of Binghamton.

For the foregoing reasons, the City of Binghamton's motion to dismiss the claims against it is GRANTED. In all other respects, Defendants' motion is DENIED.

IT IS SO ORDERED.

Dated: February 24, 2011

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge